Your Honor, I'm Herbie Lye for the Appellant. The question posed by the Court in this case is as follows. Whether Appellant's 200-year sentence for possession of child pornography comprised of 20 consecutive sentences violated the Eighth Amendment. And the test to be employed is with the concurring opinion of Justice Kennedy in the Harmelin case. And it is as follows. Is this the rare case that leads to an inference of gross disproportionality between the sentence imposed and the crime or crimes committed? Our position, of course, is that that inference, the first part of the test is clear, that that inference should be found. For these reasons, Your Honor, Morton Berger, the Appellant, had absolutely no criminal history of any kind. Insofar as the child pornography that he possessed, he shared it with no one. As opposed to the Miners case decided by this Court in 2007, in which the defendant the inference did not apply. The defendant was given a 15-year sentence because he advertised and distributed this material. And what is equally important is that he had absolutely, Morton Berger had no proclivities to commit any crime on any young person. And that is the uncontradicted psychological report that we have in evidence. I'm not sure I understand that, Mr. Ely. It sounds like if he is procuring child pornography, he has essentially hired somebody else to molest the children and immortalize it on videotape for his own pleasure. Is that wrong? Well, he possessed it. He did it for his own pleasure, Your Honor. And so somebody else molested these children and recorded it for him, basically. Yes, Your Honor. But the difference is stark. The difference is stark as to whether in the Miners case, when this Court went out of its way to say, in effect, there's a difference between possession and advertising and distributing. And the Federal guidelines and the comments on the Federal guidelines are also clear between the difference between mere possession. Yes, Your Honor, we would have to concede that he is a player in this industry, but a bit player as it goes. It is quite different than someone who actually does these kind of acts, Your Honor, than possesses them. I understand that. But you would not argue that a 10-year sentence was disproportionate? Your Honor, I mean, he got a 10-year sentence for a 10-year sentence. And that is a crime of possession. A 10-year sentence, Your Honor, in our opinion, to be frank, would also violate the Eighth Amendment. However, Your Honor, he is now going on 11 years. And the question in this case is still whether this sentencing scheme imposed by the State of Arizona, without any right of clemency, of commutation, of probation, that he's there for 200 years for this sentence. I'm trying to understand what aspect, what part of the scheme is that you're concerned about. If he commits a crime of possession of the child pornography and he's subject to a 10-year sentence, if he commits that crime 10, 20 times, he got a 200-year sentence. I'm sorry, Your Honor. Yes. So is your concern with the 10-year aspect or the consecutive aspect that gets you 200 years? Well, Your Honor, when it comes to consecutive sentences, which is part of the argument on the other side, number one, Your Honor, there is no case in the country that says that the Eighth Amendment cannot apply because of consecutive sentences. What about Parker? The Parker case, Your Honor, and the Harris case and the Hunger case say nothing different. Doesn't Parker hold that mandatory consecutive sentences for firearm convictions did not violate the Eighth Amendment? That is correct in that case, Your Honor, because of the fact that the underlying defendant had violent history, not because it's a consecutive sentence, not at all, Your Honor. As I say, the Hungerford case and the Harris case are very consistent with our position. It's the question as stated in the Gonzalez case by this Court as to whether or not the sentence is disproportionate to the crime. And then you have the additional fact, as I say, there is no right of early relief. Your Honor, I want to go to the Supreme Court case. As you know, a Federal court can't grant habeas unless there's a Supreme Court decision that recognizes the right. What's your best Supreme Court decision? Under ADPA, Your Honor, the best Supreme Court decision is the concurring opinion of Justice Kennedy. And on page 23 of their brief, that's not the opinion of the court. So what's the opinion of one justice or whoever was concurred with them? Well, Your Honor, it is the opinion of the court that would be binding on us? I think, Your Honor, when you combine that case with the Helm case, that, Your Honor, what you come out to, and they concede on page 23 of their brief that there is a Federal principle, and the Federal principle is what Justice Kennedy laid down. And that principle was enunciated by this Court in both the Gonzales case and the Castro case, in both cases that they found. And in the recent case of Doty v. Horn, the Court, this Court, Ryan, rather, this Court found that there is that Federal principle, and so the question becomes, does it make any difference in this case? Did the Court, did the State court mischaracterize, misapply the Federal principle? The Federal principle, Your Honor, and to your question, is the test laid down by Justice Kennedy. I think that's clear. Well, Mr. Ely, I still have a few scars from a case called Andrade where a defendant was sentenced consecutively for stealing some videotapes. In the philosophy of the Court, there was seems to me contrary to your position in upholding that sentence. What do you do with Andrade? Your Honor, I think Andrade we may have a difference of opinion. I think Andrade is consistent with what we're saying. And, Your Honor, particularly, as I said before in the recent Doty case, I think that principle is clear. I didn't think there was any dispute, Your Honors, of what the Federal principle is. So your position is the principle is clear, the application was not what you, what was misapplied. Was not correct. That is absolutely correct, Your Honor. And so far as consecutive sentences concern, Justice Silverman, that in the State v. Davis case, for example, that's a recent Arizona case in which there were consecutive sentences, and those consecutive sentences were deemed a violation of the Eighth Amendment because of the principle that Justice Kennedy had laid down. So that is our clear position on that. Yes. The problem under habeas, I guess my concern is, even if we agree with you, if we agreed completely with your principles and your application, we think the Arizona Supreme Court got it wrong, that's still not enough to get relief under habeas, and they have to have an unreasonable application. So I read, you know, Justice Bail's opinion and Justice Hurwitz's concurrence, and I say, well, I may disagree with it, but it doesn't look unreasonable. What's unreasonable about the approach that the Arizona Supreme Court took? The unreasonableness, Your Honor, is the very things that we're talking about, is going back to the very basics of this case, that this man only possessed this material, had no proclivities whatsoever. And so, Your Honor, in a word, I have to say about our Supreme Court, they were wrong. They were clearly wrong. They misapplied the law that exists, and the Court should then look at this de novo through that lens, and this Court will respectfully find that in that connection that the law should be on the merits that the Eighth Amendment applies. They raise an issue of all these many other hits that he had. I do want to say briefly on that subject that there is not a case, again, in the country that says in this kind of case you can consider the additional hits that he had that he was not charged with of possession. They have cases that don't deal with that issue in other ways. In fact, Your Honors, in terms of that, where we have cases that we've attached to our addendum of our brief, in which one case, the Illinois case, a man had 235,000 hits of child pornography that he was convicted of, and he got a 10-year sentence with early release, we have done, Your Honor, in that connection, on the difference between their position and our position. And, Your Honor, respectfully, that no one can answer this better than the prosecution did in their closing argument. In their closing argument, the prosecutor said to the jury, even though there is 20 counts, we charged him with 20 offenses. It's all the same offense, except for a different image on each one. So at least in this case, you don't have five or six different crimes you have to consider, so these are all the same. And that's exactly right here. Because now with technology, and it has been in this case, with the click of the button, you have different images that he was not convicted of and was only convicted of the 20 images, and nevertheless, that sentence, whether or not you add anything to it, doesn't make the sentence any better, any more constitutional. It makes it just as an affront to the Eighth Amendment, no matter how many hits he had. And, Your Honor, going back to the question of the AEDPA and the right of habeas corpus, in both the Ramirez case and the Gonzalez cases, which were three strikes and you're out case in California, this Court held that the AEDPA did not apply ‑‑ I mean, it applied, but they were able to reach the merits because of the fact that it was a de novo hearing and it was a misapplication of the law by the State courts. And in those cases, Your Honor, habeas corpus was issued. So, Your Honor, it's not just looking at it from the lens of, gee, I don't know whether this opinion of the Supreme Court was right or wrong. This Court should determine that there was a clear misapplication of Justice Kennedy's opinion. Your Honor, in the final analysis, Your Honor, this man has served over ten years. We agree with the defense that these pictures were terrible. They are criminal. He's been punished enough. We're going on 11 years. This is not our way. This is not the American way. This is barbaric, outrageous, and, in a word, cruel and unusual, and we ask that habeas be issued in this matter, Your Honor. Thank you, counsel. Thank you. Let's hear from the State. May it please the Court. My name is Assistant Attorney General Robert Walsh appearing on behalf of the Respondents in this case. This Court has two questions that it needs to address. The first question is whether or not the Arizona Supreme Court issued a ruling that was contrary to or an unreasonable application of Supreme Court precedent as defined by the holdings of the Supreme Court when it decided that the appropriate yardstick for the sentences that Mr. Berger received was each 10-year sentence as opposed to the 200 aggregate total. The second question this Court needs to also address is whether the Arizona Supreme Court's determination that each 10-year sentence per visual depiction of child pornography was grossly disproportionate to the crime. That's really what the questions are before the Court. This is not de novo review. Now, what I'd like to do is I'd like to address the first part of that. What is the appropriate yardstick? Now, I've looked at the case law, and I wasn't able to find any Supreme Court decision that says that when you have a defendant who's been convicted of multiple crimes, that you need to look at the aggregate total. And when that situation exists, this Court in Stenson versus, I believe it was Stenson versus Lambert, indicated that if the Supreme Court hasn't addressed an issue in its holding, then the State court determination cannot be contrary to or an unreasonable application of Supreme Court precedent. And that's something the Supreme Court has said repeatedly. In Richter v. Harrington, it said it cannot be an unreasonable application for the State court to decline to follow a rule that this Court hasn't announced. Now, here, what we're going to do. So in an Eighth Amendment cruel and unusual punishment analysis, you're suggesting we ignore the punishment? No. What I'm saying is this. I mean, we have to look at what the Supreme Court has said. Right. But in the end, he was sentenced. It was a unitary sentence imposed. Right. Unitary punishment. So why can't we look at that? Well, because there's no Supreme Court case in a holding that tells you that you may. In fact, all the cases that I've cited to you in my brief, Lockyer v. Andrade was a case where Justice Souter, in his dissent, said we need to look at this sentence as a 50-year sentence. And the majority explicitly took on that notion and said, no, he was convicted of two separate violations of this crime. He got two consecutive 25-to-life sentences. Now, O'Neill v. Vermont. I'll admit, I wrote in my brief it was dicta. But it basically says the mere fact the defendant received many offenses is because he committed many offenses. He can no more assail the constitutionality of a burglary statute by saying, I committed so many burglaries, if you punish me for each, it'll exceed my lifetime. It does say, however, that if the sentence per conviction were unduly harsh, that that issue could be raised. But really, the unreasonableness is not what the sentences is or the consecutive nature of the sentences, but the fact the defendant did it many times. What's very important, too, Your Honor, is that many different courts have relied upon that. We've got to think about these kind of cases, though, is that electronically you can possess a large number or volume. We don't, in drug cases, for example, say, well, you had a pound of cocaine, and therefore we have to look at it gram by gram and assess punishment that way. We look at it holistically. Why in this day and age shouldn't we look at it holistically if we're talking about basically one transaction? Well, first of all, it's not one transaction. In this case, there were many offenses. I grant you that. I mean, I guess, but he's charged with essentially a unitary offense because the officers retrieved this, and they have one batch that they recovered, just as they'd have a batch of drugs that they recovered. And the only difference really is technology. No, it isn't, Your Honor, because all that technology has done is made it easier for him to abuse many more children at a quick period of time. The other thing we have to remember is it's the legislature's prerogative to define crimes. Now, the reality of it is this technology is such. I mean, look what happened yesterday with the Boston Marathon. Somebody planted two bombs and was able to create an enormous amount of havoc. We take a look at a machine gun. A machine gun, someone could pull or hold down a trigger and kill everyone in this courtroom within seconds. The fact that technology makes the commission of a crime easier doesn't have any impact. What we look at is the number of people who are involved. And just as someone who would come in here with a machine gun and kill everyone here would get one count per person killed, that's the same type of situation we have here. But I must say, in looking at these cases, we see a lot of child pornography cases, a whole lot of them. And we look at somebody who's charged federally, and they may have thousands of images, and they don't have anywhere near this kind of sentence imposed. So when you react just, I suppose, from a gestalt point of view, you say, boy, this seems disproportionate to me. It seems grossly disproportionate from what the norm that we see day in and day out in the federal courtrooms. Now, I understand that. Of course, when you get those cases, you're looking at it on direct review, but that is not the standard. I understand. And obviously, under Federalist system, we have 50 different States and the Federal Government who are basically trying to decide how to deal with societal issues. Do they have a carte blanche? Is there any limit on what they could impose as a sentence in this kind of crime? With this type of case? Make it 100 years per count mandatory if they wanted to? I would have a very difficult time distinguishing that particular case from Harlan v. Michigan, Your Honor, because in Harlan you had, like Mr. Berger, a first-time offender who possessed 652 grams of cocaine, just simply possessed it. And Justice Kennedy wrote in his decision, he said that the Michigan legislature could with reason determine that that quantity of cocaine could cause so much social displacement and harm to the individual and society that it warranted the retribution and deterrence of a life sentence without parole. There's no Eighth Amendment ceiling is your argument on what they could? Well, you know, the Supreme Court has indicated, obviously, that there are extreme examples, and Rommel v. Estelle, they said, for example, for having a late library book or a parking ticket and getting life, or having a common cold and having sickness for one day. But, you see, what we really need to do to make the sentence castration? No. That would actually be a constitutional means of punishment. But that's, you know, that actually is something more like Weems v. United States. But, you know, what we're looking at here is, you know, would you were talking to counsel during his argument, and you were saying that you read the decisions by Justice Hurwitz and Justice Bales, and the question here is not whether we agree with it, but whether or not reasonable, fair-minded jurors could come to the conclusion, hey, we all agree this was an objectively unreasonable decision. And given the fact that when you compare what Mr. Berger got per account, 10 years per picture, and you compare it to what the Supreme Court has upheld in drug cases, like in Hutto v. Davis, two consecutive 20-year sentences for an aggregate of nine ounces of pot. Three ounces in one transaction, possessing sex for distribution. We're not talking about marijuana. We're talking about children who were sexually abused. We're talking about children who were raped, who had sex with dogs, who were forced to perform fellatio while they were crying and screaming. You know, the problem is, is that when you look at it that way, I mean, drug offense is you ingest it, that's the end of it, but these children live on. And Arizona has taken a very firm stance in trying to protect these children. What we're trying to do is we're trying to make it so severe, we're trying to increase the deterrence, because this is not an easy crime to detect. It's not a very easy thing at all to do. But by having that type of deterrence, we have two things that go in our favor. Number one, it really does decrease the demand of child pornography. People will hear about this sentence in Arizona and say, my gosh, I don't want to have that stuff. And what they're going to do is they're going to destroy it, which advances another purpose. What it's going to do is it's going to take away the images themselves that are a memorialization of this crime. It protects the privacy interests of the child who suffers an injury, just like the same way a libel or a slander defames a person every time it's published. It also dries up the market. And theory. And theory. And theory. Of course. But we only have to take a look. I mean. I mean, there's no empirical evidence on this. No, but under the rational basis test that Harmland and Ewing both. No, I understand. But would you say you were talking in positive terms of this is the effect of it. Right. And that's my question. I don't think there's any empirical evidence. Not that there needs to be. I'm just saying. Right. Right. Now, I understand that. The point I'm trying to make is that Ewing v. California and Harmland v. Michigan, both of those cases, Justice Congress says this might not even work. Justice Kennedy says this harsh sentence is a very novel experiment. But there is a reasonable relationship between the means and what they're trying to accomplish. And if that's the case, there can't be any disagreement among fair mind jurists that 10 years per sentence is unconstitutional. And when it comes down to the aggregate total, I mean, again, there has been no Supreme Court case defined that says you look at the aggregate total. All the cases that I've cited to the court from the Supreme Court indicate that they would, in fact, take the very approach Arizona did. So let's say if there are 3,000 images, then a 10-year maximum on each one would not be unreasonable? No. No, because what we look at the 5,000. Or at least the Supreme Court hasn't said that yet. No, the Supreme Court hasn't said it. And that's really what the ultimate question is. But, you know, the point is this. I mean, you ask excellent questions when you talk about the, well, what if you just keep aggregating it? The reality of it is you can't reward somebody who commits a crime multiple times and say we're going to give you concurrent sentences because under Justice Kennedy's analysis, where are the objective standards? Well, I guess that's the question because I understand the argument that consecutive sentences, there's nothing evil at all about or improper about consecutive sentences imposing them just because they're consecutive. The real question is do we look at the whole punishment or do we say, no, we can't look at the whole punishment, we can't look at the sentence? No, you can't. I mean, that's a central argument that's been made in every dissent in this case so far is that you really have to look at the whole sentence. And your response is, I gather, well, the Supreme Court hasn't said that yet. Right. And that's essentially all that matters when it's said and done. And I think the other thing that we have to keep in mind is this. Five federal circuits, 20 states, including Arizona, have approached this issue the way that I'm advocating here. And the other thing, too, is if you even look at the cases that Mr. Berger cites, Hungerford, Parker, they don't stand for the proposition that he claims. But what I found was interesting is that Parker does cite United States v. Harris. And as I point out in my brief, by talking about whether or not these armed robberies, we are unable to say that the robberies committed by the defendants and the sentences imposed for each crime are grossly disproportionate. I could argue with outcome, you know, based upon that, that this Court looks at each sentence per crime. Yes. I understand that. But we have another dimension in this case, which is the computer. This is all of this stuff is in one computer. And there is at least some physical limit to how many transactions and separate transactions or robberies or other kinds of crimes one can commit. With a computer, it's infinite. Oh, that's true. That's true. I mean, you could, for example, steal money from a lot of different people with a few keystrokes as well by clearing out their bank account. But the reality of it is you've got to remember who got harmed. All those people who had those accounts have lost money. How many different children were involved in these 20 pictures? The Supreme Court, the Arizona Supreme Court, I think, found 15. I mean, I saw those pictures about 11 years ago. There were quite a few. There were about two or three that involved Helen and Gavin, who were brother and sister, apparently. But, you know, basically, there were quite a few children. I want to talk about very quickly the – Would it make a difference if there were 20 pictures of the same child all taken at one time? No, that wouldn't make a difference at all because under Arizona law, each visual depiction, even if it's a duplicate copy, is a separate count. And they're different. And it's not just the number of children. It's also what could happen with those pictures. Let me try to understand you. If I have a photograph on my computer and I just copy it 20 times, the exact same picture, in your view, it would be 20 separate counts? Under Arizona law, that would. That would. Now, the thing is, what we're talking about here is a lot of harm. Why isn't that a double jeopardy issue? No. Why is that? Because Arizona law has defined it under visual depiction. If you're possessing, at the same time, 10 a.m. on April 16th, 20 copies of the same photograph. That's correct. And, Your Honor, although it wasn't something that I addressed in our brief because it wasn't essential to the issue, State v. McPherson is an Arizona case that deals with that issue. I believe I've cited it in my brief. In my answer, I also cited Commonwealth v. Kohler, State v. Mutaler, which is a Wisconsin case. They all deal with that. These cases deal with that exact same issue that I just posed to you. Yes. And, basically, each visual depiction constitutes one count. So it's not what you have all together. It's one count. But the point is, is we're talking about how should we draw the line. This is just like in Rimmel when we basically say, hey, what amount of money is necessary to trigger this, you know, three strikes law? Essentially, that's what Justice Kennedy says we need to reserve for the legislature. It is appropriate for this Court to look at the whole total conduct that Mr. Berger did in terms of all his conduct. I mean, he did, he collected these pictures not one day. He had them, he'd been collecting them for six years. But under your theory, it wouldn't make any difference if it were just one download or, right? No, and it wouldn't. But under Mr. Berger's case, I mean, he had three ring finders that had these pictures organized according to who the child was with and what they were doing. And it was just an enormous collection. This wasn't a, hey, I'll have it at once, someone gave it to me. I mean, conceivably, that case could happen, and I'd be making the same argument to you. But Mr. Berger, the reason why it was important to the Arizona Supreme Court was under their jurisprudence. They were trying to decide how to distinguish Davis, which, by the way, is not binding on this Court. And Davis basically invalidated three consecutive mandatory sentences. What the Arizona Supreme Court did in its two-step analysis was to say, all right, we've determined a rational basis for this sentence. Now let's determine whether or not Mr. Berger is the guy that the legislature had in mind when they said these sentences should be mandatory consecutive. My time is up. Thank you very much. Thank you. Thank you. Your Honor, what counsel has failed to do in his rhetoric is to analyze, for example, under the Federal Guidelines, where they have looked at that in depth. And this man would have received a sentence for what he did, notwithstanding his argument about the binders, which were not before the jury, between one and five years, because the courts make a distinction between the courts make a distinction between the possession and what you do in advertising and distributing. Essentially, this case deals with, as the State said in the closing argument to the jury, one crime with separate counts. And as Justice Thomas has said, that in the technology age, you just sit in front of your computer and each one then becomes a separate count. And counsel does not deal and does not contradict what we have stated in our intra and interjurisdictional analysis. This Court respectfully has the homework before it that it can determine under and should determine under the evidence that habeas be issued, because this crime that he committed has been analyzed by experts in this field through the most example best example is the Sentencing Commission, Sentencing Guidelines Commission, and held what he would have gotten. Every person that has dealt in this field says, in effect, this sentence is outrageous. And the last thing I would say, Your Honor, is the Federal Guiding Principle, which this Court has used, is Justice Kennedy's concurring opinion in Harmelin. And the Court has had no hesitation in using it. Thank you, counsel. Thank you. Thank you. Very helpful arguments. Thank you both. The case is argued to be submitted for decision.
judges: Schroeder, Thomas, Silverman